IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. _____ |
| v. | ) ) | Judge _____ |
| GEORGE MITCHELL, and BNSF RAILWAY COMPANY, | ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

Plaintiff, LIBERTY MUTUAL INSURANCE COMPANY ("Liberty Mutual"), by and through its attorneys, John E. Sebastian and Albert L. Chollet III of Watt, Tieder, Hoffar & Fitzgerald, L.L.P., and for its Complaint for Declaratory Judgment and Other Relief against Defendants, GEORGE MITCHELL ("Mitchell") and BNSF RAILWAY COMPANY ("BNSF"), states as follows:

**NATURE OF CLAIM**

1.       This action seeks a declaratory judgment pursuant to 28 U.S.C. §2201, wherein Liberty seeks a declaration as to the respective rights and obligations of Liberty Mutual, Mitchell and BNSF with respect to a Supersedeas Bond No. 022027281 (hereinafter the "Bond"). Liberty Mutual issued the Bond, as surety, on behalf of its Bond principal, BNSF, in connection with an underlying state court judgment in the amount of $1,779,000.00 entered on May 17, 2012 in favor of Mitchell and against BNSF (hereinafter "Judgment" or "Underlying Judgment") in the matter of George Mitchell, Plaintiff, vs. BNSF Railway Company, Defendant, No. 09-L-11, filed in the Ninth Judicial Circuit, Circuit Court of Hancock County, Illinois (hereinafter "Underlying Action"). Two subsequent, related appeals filed by BNSF in the Appellate Court of Illinois,

1

Third District, call into question the Underlying Judgment, namely: 1) the original appeal filed as to the Underlying Judgment, No. 3-12-0664 (hereinafter "Original Appeal"); and 2) the appeal following the Circuit Court's denial of BNSF's Petition for Relief From Judgment pursuant to 735 ILCS 5/2-1401, *et. seq.* (seeking a new trial and reversal of the Underlying Judgment based upon newly discovered evidence), No. 3-14-0533 (hereinafter "Section 1401 Appeal"). The penal sum of said Bond is $2,668,500.00, which represents 150% of the Underlying Judgment amount of $1,779,000.00.

    2.    As to the Original Appeal, The Appellate Court Order dated May 28, 2014 denied BNSF's appeal and affirmed the Underlying Judgment in favor of Mitchell. On September 24, 2014, The Supreme Court of Illinois denied BNSF's Petition for Leave to Appeal.

    3.    As to the Section 1401 Appeal, BNSF filed its Notice of Appeal on July 9, 2014 with the Appellate Court. BNSF's Section 1401 Appeal remains pending as of the filing of this instant Action.

    4.    Notwithstanding that BNSF's Section 1401 Appeal remains pending, Mitchell has made demands upon the Liberty Mutual Bond. More specifically, Mitchell claims that notwithstanding the pendency of BNSF's Section 1401 Appeal all of BNSF's appellate remedies have nevertheless been exhausted as to the Underlying Judgment itself and that Liberty Mutual's liability to Mitchell under the Bond (a) has already been triggered and (b) is completely independent of any ultimate outcome in the Section 1401 Appeal and/or any further appeals thereafter.

    5.    With respect to Mitchell's demand against the Bond, Liberty Mutual contends the following, among other things: (a) Mitchell's demand against the Bond is premature, given that the Bond contains an express condition precedent to Liberty Mutual's liability which has not yet

occurred, namely that Liberty Mutual "shall pay all costs, judgments, and interest thereon for such portion of the judgment as is affirmed and not reversed following the exhaustion of all appellate remedies…;" (b) given that BNSF's Section 1401 Appeal is still pending and BNSF has a motion to stay enforcement pending, the aforementioned express condition precedent that would potentially trigger liability under the Bond has not yet occurred; and (c) because BNSF is seeking an Order from the Appellate Court for Relief from the Underlying Judgment of May 17, 2012, including a new trial based upon newly-discovered evidence, an ultimate determination of the extent of any potential liability under the Bond cannot yet be determined and is necessarily dependent upon the outcome of BNSF's Section 1401 Appeal and/or any further appeals thereafter.

6.  In light of the dispute between Liberty Mutual and Mitchell as to whether (a) the aforementioned express conditions precedent to liability under the Bond have been triggered, (b) Mitchell's demand against the Bond is or is not premature given the pendency of BNSF's Section 1401 Appeal, and/or (c) whether the extent of Liberty Mutual's potential Bond liability necessarily cannot be determined until after the Section 1401 Appeal and/or any further appeals have been fully and finally adjudicated, Liberty Mutual seeks, *inter alia*: (1) a declaration from this Court that Liberty Mutual's liability under the Bond has not been triggered in accordance with the express condition precedent contained therein; (2) a declaration from this Court that the nature and/or extent of any potential liability under the Bond necessarily cannot be determined as a matter of law unless and until all of BNSF's remaining appellate remedies in connection with the Section 1401 Appeal and/or any subsequent appeals have been exhausted; (3) issuance of a temporary restraining order ("TRO"), preliminary injunction and/or other injunctive relief from this Court prohibiting Mitchell from attempting to enforce the Underlying Judgment of May 17,

2012 against BNSF and/or Liberty Mutual except upon conditions to be determined by this Court; and (4) for any and all other relief deemed just and appropriate by this Court.

## THE PARTIES

7. Plaintiff Liberty Mutual is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business in Boston, Massachusetts.

8. Upon information and belief, Defendant Mitchell is a citizen of and resides in Dallas City, Hancock County, Illinois.

9. BNSF is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in the State of Texas. The location from which BNSF's officers direct, control and coordinate BNSF's activities is in the State of Texas.

## JURISDICTION AND VENUE

10. Jurisdiction is proper in this Court, pursuant to 28 U.S.C. §1332(a), because the Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

11. Venue is proper in this District, pursuant to 28 U.S.C. §1391(a), because Mitchell resides in this District, and a substantial part of the events giving rise to Liberty Mutual's claims for declaratory judgment and other relief occurred in this District.

## FACTUAL BACKGROUND

**A.  The Underlying Allegations, Action and Judgment**

12. Upon information and belief, Mitchell was employed by BNSF doing track maintenance work for approximately 14 years, starting in 1995. In the Underlying Action, Mitchell alleged that his use of certain tools in connection with his track maintenance activities, including tools known as "claw bars," caused severe pain in his neck, which radiated down his arms and into his hands. Mitchell ceased working in 2008. Mitchell claimed that even after

4

undergoing two separate surgical procedures on his spine in 2009 and in 2011, he continued to experience pain in his neck and arms.

13. On or about December 11, 2009, George Mitchell ("Mitchell") filed a personal injury lawsuit in the Circuit Court of Hancock County, Illinois (the "Circuit Court"), Case No. 09-L-11, against BNSF Railway Company ("BNSF") under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 (2006).

14. In Mitchell's complaint he alleged that he had been employed as a trackman by BNSF for over fourteen (14) years. Part of his duties as a trackman was track maintenance, which required the use of various tools, including claw bars to remove spikes from the railroad ties. Mitchell alleged that he ceased working in 2008 due to the pain.

15. In 2009 Mitchell was diagnosed with a herniated disc and had surgery to remove the herniated disc. Mitchell alleged that the pain persisted and he consulted a second physician, Dr. Keith Wilkey, on or about August 24, 2010. Mitchell had a second surgery to remove another herniated disc. Dr. Wilkey opined at trial that Mitchell's occupation as a trackman significantly contributed to the herniated discs and pain in his neck. Dr. Wilkey initially set a lifting restriction on Mitchell of 20 pounds, but decreased it to a permanent restriction of 5-10 pounds. Dr. Wilkey further opined that, to a reasonable degree of medical certainty, Mitchell would continue to suffer from nerve damage the rest of his life.

16. On or about May 17, 2012, the Circuit Court, entered a judgment upon a jury verdict against BNSF and in favor of Mitchell in the amount of $1,779,000.00 in damages (the "Judgment"). The jury awarded Mitchell $41,000 for past and future medical expenses, $1,050,000 in lost earnings, $172,000 for past and future disability, $172,000 for past and future pain and suffering, and $344,000 for past and future emotional distress.

**B.     BNSF's Original Appeal and Section 1401 Appeal**

17.     BNSF thereafter appealed the Underlying Judgment to the Illinois Appellate Court for the Third District ("Appellate Court"), Case No. 3-12-0664 (Original Appeal).

18.     BNSF contemporaneously filed a motion to stay enforcement and execution of the Judgment during the course of the Original Appeal.

19.     In support of its motion to stay, BNSF filed a supersedeas bond (the "Bond"), issued by Liberty, as surety, in the amount of $2,668,500.00, which was 150% of the Underlying Judgment amount. See Exhibit A.

20.     The relevant provisions and obligations stated within the Bond provide in relevant part:

> KNOW ALL MEN BY THESE PRESENTS, That we, BNSF Railway Company as Principal, and Liberty Mutual Insurance Company, a Massachusetts corporation, as Surety are held and firmly bound onto George Mitchell in the amount of Two Million Six Hundred Sixty-eight Thousand Five Hundred Dollars and Zero Cents Dollars ($2,668,500.00) for the payment of which, well and truly to be made, we bind ourselves, our successors and assigns, jointly and severally, firmly by these presents.
>
> WHEREAS, the said BNSF Railway Company has petitioned the Appellate Court, Third District for the State of Illinois for an appeal to said court of an action previously decided in Circuit Court of the Ninth Judicial Circuit, Hancock County, IL court, wherein the said BNSF Railway Company on the docket thereof; is Defendant, and being numbered Law No. 09-L-11 on the docket thereof.
>
> NOW THEREFORE, the condition of this obligation is such that the said BNSF Railway Company shall pay all costs, judgments, and interest thereon **for such portion of the judgment as is affirmed and not reversed following the exhaustion of *all* appellate remedies,** provided however, the maximum liability of the surety shall not exceed the sum of: Two Million Six Hundred Sixty-eight Thousand Five Dollars and Zero Cents ($2,668,500.00).

See Exhibit A.  (Bold and italics added for emphasis).

21.     On or about August 20, 2012, the Bond was approved and a stay order was entered by the Circuit Court.

22. While the Original Appeal was pending before the Appellate Court, on or about February 11, 2014, BNSF filed a 735 ILCS 5/2-1401 petition (the "Petition") with the Circuit Court seeking relief from the Judgment based on the discovery of new evidence.

23. In its Petition, BNSF alleged that newly discovered evidence, which was found after the trial, negates the nature, extent and duration of Mitchell's injuries and is therefore entitled to having the Judgment vacated and a new trial ordered.

24. The Petition is supported by an affidavit of Sheriff Scott Bentzinger who received a dispatch call that three men, including Mitchell, were stealing wire from power line structures. Sheriff Bentzinger attests that he saw Mitchell sitting on the top of the power line and using an electric grinder to cut the wire. Sheriff Bentzinger also stated that Mitchell was also on the ground bending over and picking up fallen wire. Sheriff Bentzinger took several photographs of Mitchell both on the tower and off the tower. BNSF alleges that this newly discovered evidence proves that Mitchell is not permanently disabled as was alleged at trial, negatively impact the credibility of Mitchell, Mitchell's wife, and Dr. Wilkey, and will provide grounds to significantly reduce the damages that were awarded to Mitchell.

25. BNSF filed a motion with the Appellate Court to stay the adjudication of the Original Appeal until the Circuit Court ruled on its Petition. However, on or about March 20, 2014, the Appellate Court denied this request. It then affirmed the Circuit Court's Judgment on or about May 28, 2014.

26. BNSF subsequently filed a petition for leave to file an appeal of its Original Appeal to the Illinois Supreme Court, but it was ultimately denied on or about September 24, 2014.

9558858.1 103570. 00065

27. On or about June 11, 2014, BNSF's Petition was denied by the Circuit Court. BNSF timely filed an appeal of the Circuit Court's denial order of BNSF's Petition on or about July 9, 2011 ("Section 1401 Appeal"). This appeal is currently pending before the Appellate Court as Case No. 3-14-0533 and is in briefing.

28. After the denial of the petition for leave to file an appeal of BNSF's Original Appeal to the Illinois Supreme Court, the Appellate Court issued a notice of mandate on or about November 7, 2014.

29. On November 12, 2014, counsel for Mitchell, attorney Jacob C. Murov, sent email correspondence to Mr. Todd Tschantz of Liberty Mutual, seeking to collect the amount of $2,185,767.90 in satisfaction of the Underlying Judgment.

30. BNSF then filed a motion to recall the mandate and continue the stay but it was denied on or about December 22, 2014.

31. Two days later, on December 24, 2014, BNSF filed a motion in the Circuit Court to continue or issue a new stay of enforcement of the Judgment pending the Section 1401 Appeal.

32. On December 30, 2014, attorney Nelson G. Wolff, on behalf of Mitchell, sent email correspondence to Mr. Todd Tschantz of Liberty Mutual, again claiming entitlement to making collection against the Bond in satisfaction of the Underlying Judgment, in the amount of $2,206,528.29 including interest through January 9, 2015.

33. On January 8, 2015, attorney Nelson G. Wolff, on behalf of Mitchell, sent correspondence to one of Liberty Mutual's attorneys, Albert L. Chollet, III, renewing Mitchell's demand against the Liberty Mutual Bond to satisfy the Underlying Judgment.

34. On January 16, 2015, the Circuit Court denied BNSF's motion to continue or issue a new stay of enforcement of the Judgment pending the Section 1401 Appeal. Immediately thereafter on January 16, 2015, BNSF filed a Notice of Interlocutory Appeal to appeal the denial of BNSF's motion.

35. On or about January 20, 2014, BNSF filed two motions with the Appellate Court: (1) an emergency motion for a temporary stay of the Judgment pending the Section 1401 Appeal; and (2) a motion to stay the enforcement of the Judgment pending the Section 1401 Appeal. On the same day, the Appellate Court entered an order denying BNSF's emergency motion for a temporary stay of the Judgment pending the Section 1401 Appeal.

36. As of the date of the instant Complaint, BNSF's motion to stay the enforcement of the Judgment pending resolution of the Section 1401 Appeal is still currently pending before the Appellate Court as is BNSF's January 16, 2015 Notice of Interlocutory Appeal.

## COUNT I - DECLARATORY JUDGMENT

37. Paragraphs 1 through 36 above are hereby incorporated by reference as if fully set forth herein.

38. In light of the pendency of the Section 1401 Appeal: (a) express conditions precedent to BNSF's and Liberty Mutual's respective obligations under the Bond have not yet occurred or been satisfied, given that the specific language of the Bond itself does not obligate payment under the Bond until "such portion of the judgment as is affirmed and not reversed following the exhaustion of all appellate remedies…", among other things; (b) Mitchell's demands against the Bond are therefore premature; and (c) because BNSF is seeking an Order from the Appellate Court for Relief from the Underlying Judgment of May 17, 2012, including a new trial based upon newly-discovered evidence, an ultimate determination of the existence and/or extent of Liberty Mutual's Bond liability is necessarily dependent upon the outcome of

9

the Section 1401 Appeal and/or any further appeals thereafter, and is also necessarily undeterminable until after BNSF's Section 1401 Appeal and any subsequent appeals are fully and finally adjudicated.

39. To any extent Liberty Mutual may be forced to prematurely make payment to Mitchell under the Bond prior to the triggering of the express condition precedent to its liability under the Bond, *i.e.*, that neither BNSF, as principal obligor, nor Liberty Mutual, as secondary obligor/surety, shall be required to "pay all costs, judgments, and interest thereon for such portion of the judgment as is affirmed and not reversed following the exhaustion of all appellate remedies," Liberty Mutual would lose the benefit of its bargain, *i.e.*, its bargained-for right that it not be required to expend any Bond proceeds until the aforementioned, express condition precedent contained in the Bond be satisfied.

40. To any extent Liberty Mutual may be forced to prematurely make payment to Mitchell under the Bond prior to the triggering of the express condition precedent to its liability under the Bond, *i.e.*, that neither BNSF, as principal obligor, nor Liberty Mutual, as secondary obligor/surety, shall be required to "pay all costs, judgments, and interest thereon for such portion of the judgment as is affirmed and not reversed following the exhaustion of all appellate remedies," Liberty Mutual would suffer immediate and irreparable harm by being deprived of the rights that it bargained for under the express terms of the Bond, for which no adequate remedy at law exists.

41. Notwithstanding the express conditions precedent to Liberty Mutual's liability under the Bond, and the pendency of BNSF's Section 1401 Appeal, Mitchell nevertheless: (a) continues to make demand against the Liberty Mutual Bond; (b) contends that BNSF has already exhausted its appellate remedies (which Liberty and BNSF dispute); and (c) continues to take

10

efforts to make demand upon and satisfy the Underlying Judgment by means of the Liberty Bond, whereby a real, substantial and justiciable controversy has arisen and now exists between Liberty Mutual and Mitchell, which controversy is subject to resolution by this Court.

WHEREFORE, Plaintiff Liberty Mutual, respectfully requests that this Honorable Court enter and Order granting the following relief:

A. Declaring that in light of the pendency of BNSF's Section 1401 Appeal before the Appellate Court of Illinois, Third District, Liberty Mutual's obligations under the Bond have not yet been triggered by the express condition precedent contained in the Bond, namely that "such portion of the judgment … is affirmed and not reversed following the exhaustion of all appellate remedies;"

B. Declaring that in light of the pendency of BNSF's Section 1401 Appeal before the Appellate Court of Illinois, Third District, any demands by Mitchell against the Liberty Mutual Bond and/or any attempts by Mitchell to collect against the Liberty Mutual Bond in satisfaction of the May 17, 2012 Underlying Judgment are premature and are not ripe for adjudication unless and until BNSF's Section 1401 Appeal has been fully and finally resolved and adjudicated by the Appellate Court of Illinois, and any and all subsequent appellate remedies sought by BNSF thereafter have also been fully and finally resolved and adjudicated;

C. Declaring that no further legal action may be taken by Mitchell against the Liberty Mutual Bond, including but not limited to attempts to make any demand upon and/or make any collection against the Bond in satisfaction of the Underlying Judgment of May 17, 2012 unless and until BNSF's Section 1401 Appeal has been fully and finally resolved and adjudicated by the Appellate Court

11

of Illinois, and any and all subsequent appellate remedies sought by BNSF thereafter have been fully and finally resolved and adjudicated;

D. Providing for any and all other declaratory relief as deemed just and appropriate by this Court; and

E. To the full extent permitted by law, awarding Liberty Mutual its reasonable attorneys' fees, expenses and costs incurred in this instant Action.

## COUNT II – INJUNCTIVE RELIEF

42. Paragraphs 1 through 41 above are hereby incorporated by reference as if fully set forth herein.

43. As a result of Mitchell's aforementioned actions, Liberty Mutual has reasonable grounds to believe that it will incur or may incur substantial liability contrary to the aforementioned express terms and condition precedent to its liability as expressly bargained for under the Bond.

44. Liberty Mutual has no adequate remedy at law for the immediate and irreparable harm that it would incur should it be forced, contrary to the express terms of the Bond, to pay any portion of the Bond in satisfaction of the Underlying Judgment prior to any point in time that "such portion of the judgment … is affirmed and not reversed following the exhaustion of all appellate remedies."

WHEREFORE, Plaintiff Liberty Mutual, respectfully requests that this Honorable Court enter and Order granting the following relief:

A. Immediately issue a temporary restraining order and/or preliminary injunction which prohibits Mitchell from taking any further legal actions against the Liberty Mutual Bond, including but not limited to attempts by Mitchell to make any demand upon and/or make any collection against the Bond in satisfaction of the

12

Underlying Judgment of May 17, 2012 unless and until BNSF's Section 1401 Appeal has been fully and finally resolved and adjudicated by the Appellate Court of Illinois, and any and all subsequent appellate remedies sought by BNSF thereafter have been fully and finally resolved and adjudicated;

B.  Providing for any and all other injunctive relief deemed just and appropriate by this Court; and

C.  To the full extent permitted by law, awarding Liberty Mutual its reasonable attorneys' fees, expenses and costs incurred in this instant Action.

Dated:  January 23, 2015

Respectfully submitted,

LIBERTY MUTUAL INSURANCE COMPANY

By:/s/ Albert L. Chollet III_____

John E. Sebastian, ARDC #6230240
Albert L. Chollet, ARDC #6292557
Watt, Tieder, Hoffar and Fitzgerald, L.L.P.
10 South Wacker Drive, Suite 2935
Chicago, Illinois 60606
(312) 219-6900
jsebastian@wthf.com
achollet@watttieder.com

13

9558858.1 103570. 00065